**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

DAVID MILIAN HERRADA,

      Petitioner,

      v.                                  Case No. 2:26-cv-02351-BCL-cgc

CHRISTOPHER BULLOCK,
Field Office Director of U.S. Immigration
and Customs Enforcement, New Orleans
Field Office,

      Respondent.

---

**ORDER DENYING § 2241 PETITION**

---

Petitioner David Herrada has filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, by which he challenges his detention without a bond hearing. (Doc. 2, at 6)

As a preliminary housekeeping matter, the United States Court of Appeals for the Sixth Circuit has held that the "district director"—now the Field Office Director—for the place of confinement is the proper respondent to a Section 2241 petition filed by an alien challenging his confinement. *See Roman v. Ashcroft*, 340 F.3d 314, 320–21 (6th Cir. 2003). Here, that is now Christopher Bullock, Field Office Director for the New Orleans Field Office, United States Immigration and Customs Enforcement. The Clerk is therefore **DIRECTED** to modify the docket to replace Trinity Minter with Christopher Bullock. *See* Fed. R. Civ. P. 25(d).

As to the merits of the Petition for habeas corpus, the Petition (Doc. 2) is **DENIED** for the reasons that follow.

1

## BACKGROUND

Petitioner, a citizen of Cuba, entered the United States in May of 2024. Doc. 2-1, at 8.
When Petitioner entered the country, he was inspected by a border patrol agent and served with a
notice to appear for an immigration review, and the notice informed him that he was subject to
removal under Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act because he was
an "immigrant who, at the time of application for admission, is not in possession of a valid
unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document
required by the Act, and a valid unexpired passport, or other suitable travel document, or document
of identity and nationality as required under the regulations issued by the Attorney General under
section 211(a) of the Act." *Id.* at 23, 26. On November 18, 2025, Immigration and Customs
Enforcement officers arrested Petitioner and placed him in custody at the West Tennessee
Detention Facility in Mason, Tennessee. *Id.* at 11.

Since then, Petitioner has been detained in ICE custody. *Id.* Petitioner has "been denied a
custody redetermination (bond) hearing." *Id.* at 12. Petitioner seeks release or an individualized
bond hearing under 8 U.S.C. § 1226(a). *Id.* at 19-20.

## LEGAL STANDARD

Section 2241 authorizes a court to issue a writ of habeas corpus when an individual "is in
custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.
§ 2241(c)(3). An alien seeking to challenge his detention relating to removal proceedings may in
some circumstances seek relief through a Section 2241 petition. *See, e.g.*, *Zadvydas v. Davis*, 533
U.S. 678, 687 (2001). Section 2243 directs the judge entertaining an application for a writ of habeas
corpus to "forthwith award the writ or issue an order directing the respondent to show cause why
the writ should not be granted, unless it appears from the application that the applicant or person

2

detained is not entitled thereto." 28 U.S.C. § 2243. The last clause of Section 2243 imposes "a duty to screen out a habeas corpus petition which should be dismissed for lack of merit on its face," as where "the necessary facts can be determined from the petition itself without need for consideration of a return." *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970).

## ANALYSIS

The Court denies the Petition. The exhaustion doctrine bars review of Petitioner's statutory claims. Moreover, Petitioner's detention without a bond hearing violates neither the Immigration and Nationality Act nor the Constitution.

### I.    Petitioner's Claims challenging application of 8 U.S.C. § 1225 fail.

### A.  The Exhaustion Doctrine bars review of Petitioner's statutory claims.

The Supreme Court "long has acknowledged the general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). That requirement makes obvious sense when Congress requires exhaustion. It arguably makes less sense when, as in Section 2241, Congress has not done so. Perhaps the so-called prudential exhaustion doctrine—a matter of "sound judicial discretion," *id.*—can be explained as an aspect of ripeness, the idea being that there is no ripe dispute if the Executive Branch has not had its final say. Or perhaps it is a shirking of the federal courts' "virtually unflagging" duty to exercise jurisdiction in cases properly before them. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013)).

In any event, both the Supreme Court and the Sixth Circuit have embraced the doctrine, which is thus binding on this Court. *See, e.g.*, *McCarthy*, 503 U.S. at 144; *see also Shearson v. Holder*, 725 F.3d 588, 593–94 (6th Cir. 2013). Exhaustion gives an agency "the opportunity to correct its own mistakes with respect to the programs it administers"; "discourages disregard of

3

the agency's procedures"; promotes efficiency because "[c]laims generally can be resolved much more quickly and economically before an agency"; and "may produce a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quotation marks and citations omitted).

True, the exhaustion requirement can be excused if exhaustion would be futile. But, as the Sixth Circuit has recently explained, in determining whether exhaustion would be futile, "the crucial inquiry [is] whether the agency can provide the relief requested if the argument succeeds, not whether it is likely to succeed." *Smith v. United States Securities & Exchange Commission*, --- F.4th --, 2026 WL 850806, at *7 (6th Cir. 2026).[1] And, here, the Immigration Judge or Board of Immigration Appeals could certainly grant petitioner a bond hearing or release on bond if he were to prevail on his claims; indeed, the whole theory of his claims is that the law compels the IJ to give him such a hearing (and not, say, that the federal courts should be stepping in to run bond proceedings on a categorical basis). Petitioner's statutory claims are thus barred by the exhaustion doctrine. However, Petitioner's constitutional claims are not barred by the exhaustion requirement because "the BIA cannot adjudicate the constitutionality of the statutes it administers." (citing *Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006)).

In sum, Petitioner's statutory claims are barred by the exhaustion doctrine, and are due to be rejected for that reason alone.

---

[1] *Smith* addressed the futility exception in the context of an express exhaustion requirement that excepted situations in which "there was reasonable ground for … failure to" exhaust. *Id.* at *5 (quoting 15 U.S.C. § 78y(c)(1)). That makes no difference: There is no logical reason for treating the concept of futility differently in the context of a prudential rule than in the context of a statute with a generally worded exception that encompasses the concept of futility.

4

### B. Under the governing statutes, Petitioner is an "applicant seeking admission" subject to mandatory detention.

Even if they were not barred by the exhaustion doctrine, Petitioner's statutory claims fail on the merits. Petitioner's statutory eligibility for a bond hearing is determined by whether his detention is governed by 8 U.S.C. § 1225(b)(2) or 8 U.S.C. § 1226(a). Section 1225(b)(2) provides:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). In contrast, Section 1226(a) provides, in relevant part:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General--
>
> **(1)** may continue to detain the arrested alien; and
>
> **(2)** may release the alien on--
>
> > **(A)** bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> >
> > **(B)** conditional parole . . . .

8 U.S.C. § 1226(a)(1)–(2). Petitioner argues that he is entitled to an individualized bond hearing under 8 U.S.C. § 1226(a). Doc. 2-1, at 17.

The Court disagrees. "Congress defined 'applicant for admission' broadly in Section 1225(a)(1) to include all 'alien[s] present in the United States who have not been admitted.'" *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 504 (5th Cir. 2026); *see* 8 U.S.C. § 1225(a)(1) ("An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for

purposes of this chapter an applicant for admission.").[2] Petitioner does not claim that he has been lawfully admitted—he claims only that he is seeking an adjustment of status—and as a result his detention is mandatory. *See* Doc. 2; *Avila v. Bondi*, No. 25-3248, 2026 WL 819258, at *4 (8th Cir. Mar. 25, 2026). That petitioner has been in the United States makes no difference. Unless and until Petitioner is granted authorization and lawfully admitted into the United States, he remains an "applicant for admission."

Petitioner cannot avoid mandatory detention on the ground that he is not at the border and thus is not an "arriving alien." That argument fails because Section 1225(b)(2) does not use the phrase "arriving alien." Congress surely would have done so if it had intended Section 1225(b)(2) to apply only to arriving aliens, a point highlighted by Congress' use of that phrase elsewhere in Section 1225. *Buenrostro-Mendez*, 166 F.4th at 504.2

As such, the Petitioner's detention during removal proceedings is mandatory under Section 1225(b)(2) because Petitioner is an "applicant for admission." Petitioner's challenge to that detention therefore fails.

## II.    Subjecting Petitioner to mandatory detention as required by a faithful interpretation of Section 1225 does not violate the Due Process Clause.

Petitioner also claims that his detention without a bond hearing violates the Due Process Clause. Doc. 2, at 6. "[T]he Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993) (citing *The Japanese Immigrant Case*, 189 U.S. 86, 100–101 (1903)). But, when a noncitizen has not been lawfully admitted to the United

---

[2] Statutory language underscores the point in providing that "'admission'. . . mean[s], with respect to an alien, the *lawful* entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13) (emphasis added). Until his entry into the United States is lawful, Petitioner remains an "applicant for admission," and thus his detention during removal proceedings is mandatory under Section 1225(b)(2). *See Avila v. Bondi*, No. 25-3248, 2026 WL 819258, at *2 (8th Cir. Mar. 25, 2026).

States, "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law" because such noncitizens have "only those rights regarding admission that Congress has provided by statute." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 138, 140 (2020). This is the result of "the so-called 'entry fiction' theory of immigration law," under which "[a]liens who have not 'entered the United States within the meaning of the law,' i.e., who were never lawfully admitted and do not have leave to remain, are 'still in theory of law at the boundary line,'" *Gonzalez v. Ladwig*, No. 2:26-cv-02017-MSN-atc, 2026 WL 413602, at *11 (W.D. Tenn. 2026) (Norris, J.) (quoting *Kaplan v. Tod*, 267 U.S. 228, 230–31 (1925)), where they have only those rights provided by Congress. *See Thuraissigiam*, 591 U.S. at 140. And, here, Congress did not provide a right to a bond hearing. 8 U.S.C. § 1225(b)(2)(A).

Petitioner misplaces his reliance on *Jennings v. Rodriguez*. Doc. 2-1, at 14, 17, 18. In *Jennings*, the Supreme Court rejected a constitutional avoidance argument, holding that statutory law, including Section 1225(b), *requires* detention *until* it is determined whether the detained noncitizen is admissible or instead due to be removed. 583 U.S. 281, 296–98 (2018). The case did not create a constitutional entitlement to a bond hearing, much less determine that such an entitlement would be triggered on a timeline—say, a certain number of months in detention—relevant here. As noted above, there is no constitutional entitlement. *See supra*, at 7. And if there is, Petitioner has cited no authority supporting the idea that his detention would fall on the unconstitutional side of that line.

Neither the governing statutes nor the Constitution guarantee Petitioner an individualized bond hearing in connection with removal proceedings. Those claims therefore cannot support the

7

Petition. Accordingly, it is apparent from the application that Petitioner is not entitled to the writ. 28 U.S.C. § 2243.

## **CONCLUSION**

For the foregoing reasons, the Petition for Writ of Habeas Corpus (Doc. 2) is **DENIED**. The Clerk is **DIRECTED TO CLOSE THIS CASE**.

**IT IS SO ORDERED**, this 2nd day of April, 2026.

s/ *Brian C. Lea*

BRIAN C. LEA
UNITED STATES DISTRICT JUDGE

8